IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

U.S. BANK NATIONAL ASSOCIATION,

                      Plaintiff,

                    v.

SPORTS ADVISORS, INC. and
MICHAEL R. BAUER,

                    Defendants.

ORDER AND JUDGMENT

15-cv-461-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

    Plaintiff U.S. Bank National Association has moved for reopening of this closed case for the purpose of opening the stipulated judgment against both defendants, Sports Advisors, Inc. and Michael R. Bauer. Neither defendant has opposed the motion, thereby conceding that, as alleged by plaintiff, defendants have not made the first installment payment due under their stipulated judgment of replevin.

    Under the terms of the stipulation, defendants agreed that if they failed to deliver each of the two installment payments due under the agreement within five days of the due dates, plaintiff could reopen this action without notice and take judgment against defendants for the sum of $521,592.33, together with interest, late charges, attorney fees, costs, expenses and disbursement not included in the $521,592.33 sum whether accrued before the entry of judgment or incurred afterwards. The parties also agreed that in the event of default, plaintiff could obtain judgment of replevin against defendant Sports Advisors, Inc.,

1

in the form demanded in the complaint and that plaintiff would be entitled to possession of all collateral of defendant Sports Advisors, Inc., as described in the Business Security Agreement attached to the complaint as Exhibit 3. In the absence of any response by defendants, the motion will be granted.

ORDER

IT IS ORDERED that

1. Plaintiff U.S. Bank National Association's motion to reopen this action without notice is GRANTED;

2. Plaintiff may take judgment against defendants Sports Advisors, Inc. and Michael W. Bauer for the sum of $521,592.33, together with per diem interest at the variable interest rate set forth in the January 31, 2014 Revolving Credit Note and the Revolving Credit Agrement also dated January 31, 2014, late charges, attorney fees, costs, expenses and disbursements not included in the $521,592.33 sum whether plaintiff's costs accrued before the entry of judgment or were incurred afterwards; and

3. Judgment of replevin is entered against defendant Sports Advisors, Inc., in the form demanded in plaintiff's complaint and plaintiff is entitled to possession of all collateral of defendant Sports Advisors, Inc., as described in the Business Security Agreement attached to

the complaint as Exhibit 3.

    Entered this 23d day of November, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

Judgment entered this 23d Day of November, 2015.

_Peter Oppeneer_
Peter Oppeneer, Clerk of Court



# BUSINESS SECURITY AGREEMENT

This Business Security Agreement (the "**Agreement**") is made and entered into by the undersigned pledgor/grantor (collectively and individually, the "**Debtor**") in favor of U.S. Bank National Association, 400 City Center, Oshkosh, WI 54901 (the "**Bank**") as of the date set forth below.

### ARTICLE I. SECURITY INTEREST AND PLEDGE; DEFINITIONS

**1.1 Grant of Security Interest/Collateral Pledge.** In consideration of certain financial accommodations granted by Bank to Sports Advisors, Inc. (collectively and individually, the "**Borrower**"), and to secure the Obligations (defined below), Debtor hereby grants to Bank a security interest in and collaterally assigns to Bank the Collateral (defined below).

**1.2 "Collateral"** means all of the following, whether now owned or hereafter acquired by Debtor, individually, collectively or with others, and wherever located (including without limitation all documents, instruments, general intangibles, monies, accounts, additions and accessions, spare and repair parts, supplies, special tools, replacements, returned or repossessed goods and books and records constituting any part thereof, arising therefrom or relating thereto); together with all supporting obligations therefor and all products and proceeds thereof [**check all that apply**]:

- ☒ All accounts, instruments, monies, documents, chattel paper, general intangibles, contract rights, investment property (including any securities entitlements and/or securities accounts held by Debtor), certificates of deposit, deposit accounts, and letter of credit rights; and
- ☐ All inventory; and
- ☐ All equipment; and
- ☐ All fixtures; and
- ☐ Other Collateral (the following, whether constituting instruments, chattel paper, general intangibles, equipment, accounts, inventory, fixtures or other collateral):

**1.3 "Obligations"** means (a) all of Borrower's debts, liabilities, obligations, covenants, warranties, and duties to Bank and/or any affiliate of Bank (including, without limitation, any credit card debt, but specifically excluding any type of consumer debt), whether now or hereafter existing or incurred, whether liquidated or unliquidated, whether absolute or contingent, and of whatever nature, regardless of whether such financing is related in time or type to the financing provided as of the date of the Agreement, and regardless of whether arising out of existing or future credit granted by Bank to Borrower, to Borrower and others, to others guaranteed, endorsed or otherwise secured by Borrower, to any debtor-in-possession or other successor-in-interest of Borrower; (b) if Debtor is a guarantor of any of the foregoing obligations of Borrower, all debts, liabilities, obligations, covenants, warranties and duties of Debtor under any existing or future guaranties of such obligations; (c) principal, interest, fees, expenses and costs of collection (including attorneys' fees) relating to any of the foregoing; and (d) all of Debtor's obligations under the Agreement.

**1.4 "Loan Documents"** means together and individually any note, loan agreement, security or pledge agreement, assignment, financing statement, lease, mortgage, deed of trust or other pledge of an interest in real or personal property, any guaranty, subordination, letter of credit and letter of credit reimbursement agreement, banker's acceptance, and any other agreement, document or instrument previously, concurrently or hereafter executed or delivered by any party to or in favor of Bank evidencing, creating, securing, guarantying or otherwise related to any of the Obligations or the Collateral, even though not specifically enumerated.

**1.5 Other Definitions.** Unless otherwise defined, the terms set forth in the Agreement shall have the meanings set forth in the Uniform Commercial Code as adopted in the Loan Documents and as amended from time to time. The defined terms hereunder shall be interpreted in a manner most favorable to Bank.

### ARTICLE II. WARRANTIES AND COVENANTS

In addition to all other warranties, representations and covenants of Debtor in any other Loan Document, while any part of the credit granted Borrower under the Loan Documents is available or any Obligations are unpaid or outstanding, Debtor continuously warrants and agrees as follows:

**2.1 Debtor's Name, Location; Notice of Location Changes.** Except as otherwise disclosed to Bank in writing, Debtor's name and organizational structure have remained the same during the past five (5) years. Debtor will continue to use only the name set forth with Debtor's signature unless Debtor gives Bank prior written notice of any change. Furthermore, Debtor shall not do business under another name nor use any trade name without giving ten (10) days prior written notice to Bank. Debtor will not change its status or organizational structure without the prior written consent of Bank. Debtor will not change its location or registration (if Debtor is a registered organization) to another state without prior written notice to Bank.

**2.2 Accuracy of Information; Verification.** All information, certificates and statements given to Bank pursuant to the Agreement will be accurate and complete when given. Also, Bank may verify Collateral in any manner and Debtor shall assist Bank in so doing.

Exhibit 3

**2.3 Organization and Authority.** The execution, delivery and performance of the Agreement and the other Loan Documents to which Debtor is a party: (i) are within Debtor's power; (ii) have been duly authorized by proper corporate, partnership or limited liability company action (if applicable); (iii) do not require the approval of any governmental agency, other entity or person; and (iv) will not violate any law, agreement or restriction by which Debtor is bound. The Agreement is the legal, valid and binding obligation of Debtor, and is enforceable against Debtor in accordance with its terms.

**2.4 Status of Collateral.** All Collateral is genuine and validly existing. Except for items of insignificant value or as otherwise reflected in writing by Debtor to Bank, (i) Collateral constituting inventory, equipment and fixtures is in good condition, not obsolete and is either currently saleable or usable; and (ii) Collateral constituting accounts, contract rights, notes, chattel paper and other third party obligations to pay is fully enforceable in accordance with its terms and not subject to return, dispute, setoff, credit allowance or adjustment, except for discounts for prompt payment. Unless Debtor provides Bank with written notice to the contrary, Debtor has no notice or knowledge of anything that would impair the ability of any third party obligor to pay any debt to Debtor when due.

**2.5 Ownership; Maintenance of Collateral; Restrictions on Liens and Dispositions.** Debtor is the sole owner of the Collateral free of all liens, claims, other encumbrances and security interests except as permitted in writing by Bank. Debtor shall: (i) maintain the Collateral in good condition and repair (reasonable wear and tear excepted), and not permit its value to be impaired; (ii) not permit waste, removal or loss of identity of the Collateral; (iii) keep the Collateral free from all liens, executions, attachments, claims, encumbrances and security interests (other than Bank's paramount security interest and those permitted in writing by Bank); (iv) defend the Collateral against all claims and legal proceedings by persons other than Bank; (v) pay and discharge when due all taxes, levies and other charges or fees upon the Collateral except for payment of taxes contested by Debtor in good faith by appropriate proceedings so long as no levy or lien has been imposed upon the Collateral; (vi) not lease, sell or transfer the Collateral to any party nor move it to any new location outside of the ordinary course of business; (vii) not permit the Collateral, without the consent of Bank, to become a fixture or an accession to other goods; (viii) not permit the Collateral to be used in violation of any applicable law, regulation or policy of insurance; and, (ix) preserve Bank's rights and security interest in the Collateral against all other parties. Notwithstanding the above, Debtor may sell, lease or transfer inventory in the ordinary course of its business provided that no sale, lease or transfer shall include any transfer or sale in satisfaction (partial or complete) of a debt owed by Debtor; title will not pass to buyer until Debtor physically delivers the goods to buyer or Debtor ships the goods F.O.B. to buyer's destination; and sales and/or leases to Debtor's affiliates shall be for fair market value, cash on delivery, with the proceeds remitted to Bank.

**2.6 Maintenance of Security Interest.** Debtor shall take any action requested by Bank to preserve the Collateral and to establish the value of, the priority of, to perfect, to continue the perfection of or to enforce Bank's interest in the Collateral and Bank's rights under the Agreement; and shall pay all costs and expenses related thereto. Debtor shall also cooperate with Bank in obtaining control (for purposes of perfection under the Uniform Commercial Code) of Collateral consisting of deposit accounts, investment property, letter of credit rights, electronic chattel paper and any other collateral where Bank may obtain perfection through control. Debtor hereby authorizes Bank to take any and all actions described above and in place of Debtor with respect to the Collateral and hereby ratifies any such actions Bank has taken prior to the date of the Agreement and hereafter, which actions may include, without limitation, filing UCC financing statements and obtaining or attempting to obtain control agreements from holders of the Collateral.

**2.7 Collateral Inspections; Modifications and Changes in Collateral.** At reasonable times, Bank may examine the Collateral and Debtor's records pertaining to it, wherever located, and make copies of such records at Debtor's expense; and Debtor shall assist Bank in so doing. Without Bank's prior written consent, Debtor shall not alter, modify, discount, extend, renew or cancel any Collateral, except for ordinary discounts for prompt payment on accounts, physical modifications to the inventory occurring in the manufacturing process or alterations to equipment which do not materially affect its value. Debtor shall promptly notify Bank in writing of any material change in the condition of the Collateral and of any change in location of the Collateral.

**2.8 Collateral Records, Reports and Statements.** Debtor shall keep accurate and complete records respecting the Collateral in such form as Bank may approve. At such times as Bank may require, Debtor shall furnish to Bank any records/information Bank might require, including, without limitation, a statement certified by Debtor and in such form and containing such information as may be prescribed by Bank showing the current status and value of the Collateral.

**2.9 Chattel Paper, Instruments, Etc.** Chattel paper, instruments, drafts, notes, acceptances, and other documents which constitute Collateral shall be on forms satisfactory to Bank. Debtor shall promptly mark chattel paper to indicate conspicuously Bank's security interest therein, shall not deliver any chattel paper or negotiable instruments to any other entity and, upon request, shall deliver all original chattel paper, instruments, drafts, notes, acceptances and other documents which constitute Collateral to Bank.

**2.10 United States Government Contracts.** If any accounts or contract rights which constitute Collateral arose out of contracts with the United States or any of its departments, agencies or instrumentalities, Debtor shall promptly notify Bank and execute any writings required by Bank so that all money due or to become due under such contracts shall be assigned to Bank under the Federal Assignment of Claims Act.

**2.11 Environmental Matters.** Except as disclosed in a written schedule attached to the Agreement (if no schedule is attached, there are no exceptions), there exists no uncorrected violation by Debtor of any federal, state or local laws (including statutes, regulations, ordinances or other governmental restrictions and requirements) relating to the discharge of air pollutants, water pollutants or process waste water or otherwise relating to the environment or Hazardous Substances as hereinafter defined, whether such laws currently exist or are enacted in the future (collectively "**Environmental Laws**"). The term "**Hazardous Substances**" shall mean any hazardous or toxic wastes, chemicals or other substances, the generation, possession or existence of which is prohibited or governed by any Environmental Laws. Debtor is not subject to any judgment, decree, order or citation, or a party to (or threatened with) any litigation or administrative proceeding, which asserts that Debtor (i) has violated any Environmental Laws; (ii) is required to clean up, remove

or take remedial or other action with respect to any Hazardous Substances (collectively "**Remedial Action**"); or (iii) is required to pay all or a portion of the cost of any Remedial Action, as a potentially responsible party. Except as disclosed on Debtor's environmental questionnaire provided to Bank, there are not now, nor to Debtor's knowledge after reasonable investigation have there ever been, any Hazardous Substances (or tanks or other facilities for the storage of Hazardous Substances) stored, deposited, recycled or disposed of on, under or at any real estate owned or occupied by Debtor during the periods that Debtor owned or occupied such real estate, which if present on the real estate or in soils or ground water, could require Remedial Action. To Debtor's knowledge, there are no proposed or pending changes in Environmental Laws which would adversely affect Debtor or its business, and there are no conditions existing currently or likely to exist while the Loan Documents are in effect which would subject Debtor to Remedial Action or other liability. Debtor currently complies with and will continue to timely comply with all applicable Environmental Laws; and will provide Bank, immediately upon receipt, copies of any correspondence, notice, complaint, order or other document from any source asserting or alleging any circumstance or condition which requires or may require a financial contribution by Debtor or Remedial Action or other response by or on the part of Debtor under Environmental Laws, or which seeks damages or civil, criminal or punitive penalties from Debtor for an alleged violation of Environmental Laws.

**2.12 Insurance.** Debtor will maintain insurance to such extent, covering such risks and with such insurers as is usual and customary on the Collateral, and for businesses operating similar properties, all as is satisfactory to Bank, including insurance for fire and other risks insured against by extended or comprehensive coverage, public liability insurance and workers' compensation insurance; and will designate Bank as loss payee with a "Lender's Loss Payable" endorsement on any casualty policies and take such other action as Bank may reasonably request to ensure that Bank will receive (subject to no other interests) the insurance proceeds of the Collateral. Debtor hereby assigns all insurance proceeds to and irrevocably directs, while any Obligations remain unpaid, any insurer to pay to Bank the proceeds of all such insurance and any premium refund; and authorizes Bank to endorse Debtor's name to effect the same, to make, adjust or settle, in Debtor's name, any claim on any insurance policy relating to the Collateral; and, at the option of Bank, to apply such proceeds and refunds to the Obligations or to restoration of the Collateral, returning any excess to Debtor. In the event of any failure of Debtor to obtain or maintain any insurance required hereunder, Bank shall have the authority, but not the obligation, to obtain any such insurance coverage, and Debtor shall immediately reimburse Bank for the cost thereof, together with interest on such amount at the highest rate of interest then accruing on any of the Obligations.

### ARTICLE III. RIGHTS AND DUTIES OF BANK

In addition to all other rights (including setoff) and duties of Bank under the Loan Documents which are expressly incorporated herein as a part of the Agreement, the following provisions shall also apply:

**3.1 Authority to Perform for Debtor.** Debtor presently appoints any officer of Bank as Debtor's attorney-in-fact (coupled with an interest and irrevocable while any Obligations remain unpaid) to do any of the following upon default by Debtor hereunder (notwithstanding any notice requirements or grace/cure periods under this or other agreements between Debtor and Bank): (i) to file, endorse or place the name of Debtor on any invoice or document of title relating to accounts, drafts against customers, notices to customers, notes, acceptances, assignments of government contracts, instruments, financing statements, checks, drafts, money orders, insurance claims or payments or other documents evidencing payment or a security interest relating to the Collateral; (ii) to receive, open and dispose of all mail addressed to Debtor and to notify the Post Office authorities to change the address for delivery of mail addressed to Debtor to an address designated by Bank; (iii) to do all such other acts and things necessary to carry out Debtor's duties under the Agreement and the other Loan Documents; and (iv) to perfect, protect and/or realize upon Bank's interest in the Collateral. If the Collateral includes funds or property in depository accounts, Debtor authorizes each of its depository institutions to remit to Bank, without liability to Debtor, all of Debtor's funds on deposit with such institution upon written direction by Bank after default by Debtor hereunder. Except for Bank's willful misconduct, all acts by Bank are hereby ratified and approved, and Bank shall not be liable for any acts of commission or omission, nor for any errors of judgment or mistakes of fact or law.

**3.2 Collateral Preservation.** Bank shall use reasonable care in the custody and preservation of any Collateral in its physical possession but in determining such standard of reasonable care, Debtor expressly acknowledges that Bank has no duty to: (i) insure the Collateral against hazards; (ii) ensure that the Collateral will not cause damage to property or injury to third parties; (iii) protect it from seizure, theft, levy, lien, claim or conversion by third parties, or acts of God; (iv) give to Debtor any notices received by Bank regarding the Collateral; (v) perfect or continue perfection of any security interest in favor of Debtor; (vi) perform any services, complete any work-in-process or take any other action in connection with the management or maintenance of the Collateral; or (vii) sue or otherwise effect collection upon any accounts even if Bank shall have made a demand for payment upon individual account debtors. Notwithstanding any failure by Bank to use reasonable care in preserving the Collateral, Debtor agrees that Bank shall not be liable for consequential or special damages arising therefrom.

**3.3 Setoff.** As additional security for the payment of the Obligations, Debtor hereby grants to Bank a security interest in, a lien on and an express contractual right to set off against all deposit accounts of Debtor at Bank, and all depository account balances, cash and any other property of Debtor now or hereafter in the possession of Bank and the right to refuse to allow withdrawals from any account (collectively "Setoff"). Bank may, at any time upon the occurrence of a default hereunder (notwithstanding any notice requirements or grace/cure periods under this or other agreements between Debtor or Borrower and Bank), Setoff against the Obligations **whether or not the Obligations (including future installments) are then due or have been accelerated, all without any advance or contemporaneous notice or demand of any kind to Debtor, such notice and demand being expressly waived.**

**3.4 Verification and Notification; Bank's Rights.** Bank may verify Collateral in any manner, and Debtor shall assist Bank in so doing. Upon the occurrence of a default hereunder, Bank may at any time and Debtor shall, upon request of Bank, notify the account debtors to make payment directly to Bank; and Bank may enforce collection of, sell, settle, compromise, extend or renew the indebtedness of such account debtors; all without notice to or the consent of Debtor. Until account debtors are so notified, Debtor, as

Exhibit 3

agent of Bank, shall make collections on the Collateral. Bank may at any time notify any bailee possessing Collateral to turn over the Collateral to Bank.

## ARTICLE IV. DEFAULTS AND REMEDIES

**4.1 Defaults.** Bank may enforce its rights and remedies under the Agreement upon default. A default shall occur hereunder if Debtor fails to comply with the terms of the Agreement or any other Loan Document to which Debtor is a party. In addition, a default under any Loan Document (including the Agreement) or under any Obligation, a demand for payment by Bank under any demand loan secured by the Agreement or a failure by any obligor to pay or perform any obligations for which Debtor has given Bank a guaranty or pledge, shall each constitute a default under the Agreement.

**4.2 Cumulative Remedies; Notice; Waiver.** In addition to the remedies for default set forth in the Loan Documents, Bank upon default shall have all other rights and remedies for default provided by the Uniform Commercial Code, as well as any other applicable law and the Agreement, INCLUDING, WITHOUT LIMITATION, THE RIGHT TO REPOSSESS, RENDER UNUSABLE AND/OR DISPOSE OF THE COLLATERAL WITHOUT JUDICIAL PROCESS. The rights and remedies specified herein are cumulative and are not exclusive of any rights or remedies which Bank would otherwise have. With respect to such rights and remedies:

(a) **Remedies.** After maturity of any of the Obligations, or a default hereunder or under any of the other Loan Documents and without notice or demand of any kind, Bank may: (i) require Debtor to hold all proceeds of the Collateral received by Debtor upon an express trust for Bank, not commingle said proceeds with any other funds or property of Debtor and turn over to Bank said proceeds in precisely the form received (but endorsed by Debtor, if necessary for collection) not later than the business day following the day of their receipt; (ii) require Debtor to assemble the Collateral and to make it available to Bank at any convenient place designated by Bank; (iii) take immediate possession of the Collateral and Debtor irrevocably authorizes Bank to enter any of the premises wherever the Collateral shall be located, and to store, repair, maintain, assemble, manufacture, advertise and sell, lease or dispose of (by public sale or otherwise) the same on said premises until sold, all without charge or rent to Bank; (iv) use, without charge, Debtor's equipment, inventory, labels, patents, copyrights, franchises, names, trade secrets, trade names, trademarks and advertising matter and any property of a similar nature, and Bank is hereby granted an irrevocable license to so use without charge. Debtor releases Bank from obtaining a bond or surety with respect to any repossession and/or disposition of the Collateral. Debtor recognizes that Bank will not have an adequate remedy in law if the obligation to assemble the Collateral is breached and accordingly, Debtor's obligation to assemble the Collateral shall be specifically enforceable. All proceeds of the Collateral received by Bank directly or from Debtor shall be applied against the Obligations in such order and at such times as Bank shall determine.

(b) **Notice of Disposition.** Written notice, when required by law, sent to any address of Debtor in the Agreement or to any other address provided to Bank by Debtor, at least ten (10) calendar days (counting the day of sending) before the date of a proposed disposition of the Collateral will be deemed reasonable notice but less notice may be reasonable under the circumstances. Notification to account debtors by Bank shall not be deemed a disposition of the Collateral.

(c) **Possession of Collateral/Commercial Reasonableness.** Bank shall not, at any time, be obligated to either take or retain possession or control of the Collateral. With respect to Collateral in the possession or control of Bank, Debtor and Bank agree that as a standard for determining commercial reasonableness, Bank need not liquidate, collect, sell or otherwise dispose of any of the Collateral if Bank believes, in good faith, that disposition of the Collateral would not be commercially reasonable, would subject Bank to third party claims or liability, that other potential purchasers could be attracted or that a better price could be obtained if Bank held the Collateral for up to 2 years. Bank may sell Collateral without giving any warranties and may specifically disclaim any warranties of title or the like. Furthermore, Bank may sell the Collateral on credit (and reduce the Obligations only when payment is received from the buyer), at wholesale and/or with or without an agent or broker; and Bank need not complete, process, repair, clean-up or otherwise prepare the Collateral prior to disposition. If the purchaser fails to pay for the Collateral, Bank may resell the Collateral and Debtor shall be credited with the cash proceeds of the sale. Bank may comply with any applicable state or federal law requirements in connection with a disposition of the Collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the Collateral.

(d) **Waiver by Debtor.** Bank has no obligation, and Debtor waives any obligation of Bank, to attempt to satisfy the Obligations by collecting the Obligations from Borrower or any third parties, and Bank may release, modify or waive any collateral provided by Borrower or any third party to secure any of the Obligations, all without affecting Bank's rights against Debtor. Debtor further waives any obligation on the part of Bank to marshal any assets in favor of Debtor or in payment of the Obligations. The waivers in this section shall be effective except to the extent expressly prohibited by law.

(e) **Waiver by Bank.** Bank may permit Debtor to attempt to remedy any default without waiving its rights and remedies hereunder, and Bank may waive any default without waiving any other subsequent or prior default by Debtor. Furthermore, delay on the part of Bank in exercising any right, power or privilege hereunder or at law shall not operate as a waiver thereof, nor shall any single or partial exercise of such right, power or privilege preclude other exercise thereof or the exercise of any other right, power or privilege. **No waiver or suspension shall be deemed to have occurred unless Bank has expressly agreed in writing specifying such waiver or suspension.**



Exhibit 3

## ARTICLE V. ADDITIONAL TERMS

The warranties, covenants, conditions and other terms described in this Section are incorporated into the Agreement.

Not Applicable.

## ARTICLE VI. MISCELLANEOUS

**All other provisions in the Loan Documents are expressly incorporated herein by reference.**

6.1   **Prior Agreements.** Unless and except to the extent that (a) the Agreement specifically provides that it amends and restates an earlier security agreement or (b) Bank shall hereafter expressly agree in writing to limit the effectiveness of the Agreement, the effect of any earlier or later security agreement by Debtor shall be cumulative with the Agreement, and all security agreements by Debtor shall be construed to provide Bank with the broadest possible scope and amount of secured obligations.

6.2   **Copies; Entire Agreement; Modification.** Debtor hereby acknowledges the receipt of a copy of the Agreement.

IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING AND SIGNED BY THE PARTIES ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. THE TERMS OF THIS AGREEMENT MAY ONLY BE CHANGED BY ANOTHER WRITTEN AGREEMENT. THIS NOTICE SHALL ALSO BE EFFECTIVE WITH RESPECT TO ALL OTHER LOAN DOCUMENTS NOW IN EFFECT BETWEEN DEBTOR AND BANK. A MODIFICATION OF ANY LOAN DOCUMENT NOW IN EFFECT BETWEEN DEBTOR AND BANK, WHICH OCCURS AFTER RECEIPT BY DEBTOR OF THIS NOTICE, MAY BE MADE ONLY BY ANOTHER WRITTEN INSTRUMENT. ORAL OR IMPLIED MODIFICATIONS TO SUCH LOAN DOCUMENTS ARE NOT ENFORCEABLE AND SHOULD NOT BE RELIED UPON.

6.3   **Attachments.** All documents attached hereto, including any appendices, schedules, riders, and exhibits to the Agreement, are hereby expressly incorporated by reference.

IN WITNESS WHEREOF, the undersigned has/have executed the Agreement as of January 31, 2014.

DEBTOR:

**Sports Advisors, Inc.**
a/an **Wisconsin** Corporation
By: _____
Name and Title: **Michael R Bauer, President**

DEBTOR ADDRESS: 123 E Main Street Ste #300, Madison, WI 53703



Exhibit 3